Dissenting Opinion by
Adkins, J.
Even though the Majority’s holding creates a socially desirable result, I disagree with its reasoning and ultimate ruling that a bank account is “money” under Md. Code (1957, 2008 Repl. Vol.), §§ 12-101-12-505 of the Criminal Procedure Article (“CP”). We interpret statutes using well-established rules of statutory construction, and “forfeiture statutes are to be interpreted under a ‘strict constructionist theory.’ ” Prince *208 George’s Cty. v. Vieira, 340 Md. 651, 659, 667 A.2d 898 (1995) (citation omitted). Because I believe the Majority strays from these rules, I respectfully dissent.
The Majority finds that in CP § 12-102(b)(l) “money” is used “in its narrowest sense, ie., coins and paper bills,” but nevertheless concludes that “money” in CP § 12-101(m)(l)(iv) and § 12-304(c)(l) takes on a broader meaning. Maj. Op. at 199-200, 147 A.3d at 384-85. The Majority asserts, “[Sjimply because ‘money’ in CP § 12-102(b) refers specifically to money that is found in close proximity to controlled dangerous substances, does not preclude money from having a broader meaning under the forfeiture statute.” Maj. Op. at 200, 147 A.3d at 385. I cannot find support for this proposition in our rules of statutory construction. Indeed, when the Court determines that a statute is unambiguous, as it has here, it should “give effect to the statute as it is written,” Wagner v. State, 445 Md. 404, 418, 128 A.3d 1 (2015), reconsideration denied (Jan. 22, 2016) (citation omitted). The Court should not “engage in forced or subtle interpretation in an attempt to extend or limit the statute’s meaning.” Id. This is precisely what the Majority does when it concludes that “money” has a narrow meaning in CP § 12-102(b)(l), but has a broader meaning in CP § 12-101(m)(l)(iv) and § 12-304(c)(l).
The Majority dismisses the Bottinis’ argument that a bank account is a form of intangible personal property under CP § 12-101(m)(l)(ii) by reframing the question this Court has been asked to answer. The Majority frames the question before us as “whether the funds in a bank account are ‘money’ ” under Maryland’s forfeiture statute, but this is not the question we were presented for review. Maj. Op. at 180, 147 A.3d at 373. Rather, we were asked to determine whether “a seized bank account [is] ‘money.’ ” Pet. for Writ of Cert, at 3 (emphasis added). To be sure, the funds in a bank account are, in common parlance, considered “money” in the broad sense of the term the Majority adopts. But the account itself is not “money.”
In his dissent from the Court of Special Appeals opinion, Judge Arthur concluded that a bank account is not money, but *209 an “intangible, contractual right.”[1] Bottini v. Dep’t of Finance, No. 15-1857, slip op. at 1, 2015 WL 6951188 (Md. Ct. Spec. App. Nov. 10, 2015) (Arthur, J., dissenting). I agree with his assessment. While the funds in a bank account may be money, the account itself is “[a] detailed statement of the debits and credits between parties to a contract or to a fiduciary relationship.” Account, Black’s Law Dictionary (10th ed. 2014). This Court has also previously recognized that “[t]he relationship between a bank and its customer is contractual.” Schultz v. Bank of Am., N.A., 413 Md. 15, 37, 990 A.2d 1078 (2010) (citation omitted) (breach of contract and negligence action against a bank for adding another person’s name to a bank account and allowing her to withdraw funds). For example, when a customer opens an account at a bank, the account is subject to the bank’s terms and conditions. These terms and conditions detail the rights and obligations of the bank and the customer, including service fees, transfer and withdrawal limits, and limits on the availability of deposited funds. In exchange for depositing funds in a bank account, the customer, depending on the type of account, receives the ability to draw checks, transfer funds, pay bills electronically, and earn interest. In addition, the Federal Deposit Insurance Corporation insures a bank account holder’s deposits up to $250,000. In short, a bank account is a bundle of intangible, contractual rights.
The Majority’s reading of the statute also renders bank accounts “functionally indistinguishable from other types of accounts that ... clearly would not fall within the definition of ‘money.’ ” Bottini, slip op. at 1 (Arthur, J., dissenting). As Judge Arthur observed in his dissent:
Many investment banks and brokerages offer money market funds, in which investors make deposits, earn interest, *210 and have the ability to write checks and make withdrawals against the account balance. Many mutual funds have similar check-writing features. Had [Daniela] Bottini deposited her brother’s ill-gotten gains into a money market or a mutual fund account, she would own a “security” within the meaning of Crim. Proc. § 12-101(m)(l), because the accounts are regulated by the Securities and Exchange Commission under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-l-80a-64. But she could obtain “money” from the securities account in exactly the same way in which she could obtain it from a bank account. Is the securities account “money”? If not, how is the bank account different?
Id. at 1-2. The Majority does not answer these questions, but instead offers a strained interpretation of the forfeiture statute that renders the term “security” in CP § 12-101(m)(l) meaningless. If the funds in a bank account are “money,” as the Majority holds, the funds in a security would also be “money,” making the term “security” superfluous. This result runs contrary to our long-established rules of statutory construction. E.g., Blake v. State, 395 Md. 213, 224, 909 A.2d 1020 (2006) (“We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.” (citation omitted)).
I recognize that the forfeiture statute is meant to prevent illegal drug manufacturers and distributors from enjoying the proceeds of their criminal enterprise. The Majority’s opinion furthers this purpose. But, as the Court observed in Vieira, “the forfeiting authority is still required to follow the procedures prescribed by the statute, and these procedures should be strictly imposed to provide post seizure due process protection to the defendant.” 340 Md. at 659-60, 667 A.2d 898. My construction of the statute seeks to further the statute’s purpose while requiring the forfeiting authority to adhere to the statute’s prescribed procedures. It would still permit the forfeiting authority to seize a bank account, without any more burdensome procedure—it simply sets a different deadline for filing its complaint for forfeiture.
*211 Because I would hold that a bank account is not “money” under CP § 12-101(m)(l)(iv), but rather is an intangible, personal property “right” under CP § 12-101(m)(l)(ii)7, the filing deadlines provided in CP § 12-304(a) apply to bank accounts. Therefore, when pursuing forfeiture of a bank account, the forfeiting authority must file a petition “within the earlier of (1) 90 days after the seizure; or (2) 1 year after the final disposition of the criminal charge for the violation giving rise to the forfeiture.” CP § 12-304(a). In this case, the County seized the Bottinis’ bank account on April 19, 2012 and filed a complaint for forfeiture on August 1, 2013—more than a year after its seizure—making the County’s petition untimely.

. I disagree with the Majority's conclusion that the Bottinis are precluded from arguing that a bank account is an interest, claim, or right because they did not raise this argument in their briefs. Maj. Op. at 200-02, 147 A.3d at 385-86. Interests, claims, and rights are categories of property listed under the subsection "tangible and intangible personal property.” Md. Code (1957, 2008 Repl. Vol.), § 12-101 (m)( 1 )(ii)5—7 of the Criminal Procedure Article ("CP”). Thus the Bottinis should not be precluded from advancing the argument that a bank account falls under one of the specific categories of property listed under CP § 12-101(m)(l)(ii),